

Hamilton Select Insurance Inc
PO Box 5189
Glen Allen, VA 23058

## STATE NOTIFICATION

This is evidence of insurance procured and developed under the Missouri Surplus Lines Laws. It is NOT covered by the Missouri Insurance Guaranty Association. This insurer is not licensed by the state of Missouri and is not subject to its supervision.

**EXHIBIT**

**A**

HSII 000001



Hamilton Select Insurance Inc
PO Box 5189
Glen Allen, VA 23058

## LAWYERS PROFESSIONAL LIABILITY DECLARATIONS

Policy Number: EOHS328534
Producer Number: 2235
Producer Name and Address: Michele McCrohan
Synergy Professional Associates, Inc.
100 Passaic Ave. Ste. 145
Fairfield, NJ
07004

Item 1:

| | |
|---|---|
| **NAMED INSURED:** | Krause & Kinsman Law Firm LLC |
| **MAILING ADDRESS:** | 4717 Grand Avenue  Kansas City, MO  64112 |
| **POLICY PERIOD:** | FROM  06/04/2023    TO 06/04/2024    at 12:01 AM at the address of the named insured as shown above |

Item 2:

| RETROACTIVE DATE | |
|---|---|
| Retroactive Date: | See Split Retro Endorsement    at 12:01 AM at the address of the named insured as shown above. |

Item 3:

| LIMITS OF INSURANCE | |
|---|---|
| Each Claim | $3,000,000 |
| Aggregate | $3,000,000 |

Item 4:

| DEDUCTIBLE(S) | |
|---|---|
| Each Claim | $10,000 |

Item 5:

| PREMIUM AND COMPANY FEES | |
|---|---|
| Premium: | $41,346 |
| Company Fee: | $150 |
| Total (of Premium and Company Fee): | $41,496 |

| OPTIONAL EXTENDED REPORTING PERIOD | |
|---|---|
| **Period (in Months)** | **Percentage of Policy Premium** |
| 12 Months | 100% |
| 24 Months | 125% |
| 36 Months | 150% |
| See SECTION IX of the policy for details. | |

| FORMS AND ENDORSEMENTS |
|---|
| Refer to PL1000, SCHEDULE OF FORMS |

LPL1001 (03/21)                                                    Page 1 of 1

HSII 000002



Hamilton Select Insurance Inc
PO Box 5189
Glen Allen, VA 23058

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## WHERE TO REPORT A CLAIM

You must report in writing any "claim" to:

By Mail:
Claims
Hamilton Select Insurance Inc
PO Box 5189
Glen Allen, VA 23058


By E-mail:
HamiltonSelectClaims@Hamiltongroup.com


PLEASE REFER TO THE POLICY FOR ANY NOTICE AND REPORTING PROVISIONS AND/OR DUTIES IN THE EVENT OF A "CLAIM".

AP7001 (01/22)

HSII 000003

Hamilton Select Insurance Inc
PO Box 5189
Glen Allen, VA 23058

# SCHEDULE OF FORMS

| FORM NUMBER | FORM NAME |
|---|---|
| LPL1001 (03/21) | Lawyers Professional Liability Declarations Page |
| PL1000 (03/21) | Schedule of Forms |
| AP7001 (01/22) | Where to Report a Claim |
| LPL1000 (04/21) | Lawyers Professional Liability Policy |
| LPL3005 (04/21) | Electronic Notarization Endorsement |
| PL1002 (03/21) | Privacy Notice |
| PL2000 (03/21) | Annual Aggregate Deductible |
| PL3001 (03/21) | Exclusion of Designated Person or Entity Endorsement |
| PL3003 (03/21) | Prior and Pending Endorsement |
| PL3005 (03/21) | Terrorism Exclusion Endorsement |
| PL3006 (03/21) | Exclusion-Access or Disclosure of Confidential or Personal Information and Data-Related Liability |
| PL3007 (03/21) | U.S Treasury Department's Office of Foreign Asset Control (OFAC) Advisory Notice To Policyholders |
| PL3009 (03/21) | Social Engineering Fraud Exclusion |
| PL3017 (04/21) | Split Limits and Retroactive Date Endorsement |
| PL3023 (07/21) | Cyber Exclusion |
| AP7300 (07/21) | Nuclear Energy Liability Exclusion (Broad Form) |
| AP7301 (07/21) | Biometric Data Exclusion |
| AP7302 (01/22) | Trade or Economic Sanctions Exclusion |
| MANU101 (03/21) | Manuscript 1 |
| AP7000 (11/22) | Signature Endorsement |

HSII 000004

Hamilton Select Insurance Inc
PO Box 5189
Glen Allen, VA 23058

## LAWYERS PROFESSIONAL LIABILITY POLICY

THIS IS A CLAIMS MADE AND REPORTED POLICY. THE COVERAGE REQUIRES THAT A CLAIM BE FIRST MADE AGAINST AN INSURED DURING THE POLICY PERIOD AND BE REPORTED IN WRITING TO THE COMPANY WITHIN THE POLICY PERIOD OR AN EXTENDED REPORTING PERIOD. PLEASE READ THE ENTIRE POLICY CAREFULLY.  THE LIMIT OF INSURANCE WILL BE REDUCED BY PAYMENT OF DAMAGES AND DFENSE COSTS.

Various provisions in this Policy restrict coverage. Read the entire Policy carefully to determine rights, duties and what is and is not covered.

Throughout this Policy the words "you" and "your" refer to the Named Insured shown in the Declarations under this Policy.  The words "we", "us" and "our" refer to the Company providing this insurance.
Other words and phrases that appear in quotation marks have special meaning. Refer to **DEFINITIONS (SECTION II).**

In consideration of payment of the premium, in reliance upon all statements made and information furnished to us, including the statements and information provided in the "application" which are made part of this Policy, and subject to all the terms, conditions and limitations of this Policy and its endorsements, we agree with you as follows:

SECTION I: COVERAGE

    **A. Insuring Agreement**

        1. We will pay, in excess of the Deductible shown in the Declarations, those sums any "insured" becomes legally obligated to pay as "damages" and "defense costs" because of a "claim" for a "wrongful act" arising out of "professional services" rendered or that should have been rendered.

        2. This insurance applies to "claims" for "wrongful acts" only if:

            a. Prior to the effective date of this Policy, no "insured" had knowledge of any "wrongful act" that could reasonably give rise to a "claim" under this Policy;

            b. No common fact, circumstance, situation, transaction, event, service, advice or decision involved in a "professional service" was reported as a "claim" or potential claim under any prior policy or disclosed in the application for this Policy or any previous insurance policy for which you have applied;

            c. The "damages" arise out of a "professional service" rendered on or subsequent to the Policy Retroactive Date specified in the Declarations and before the end of this "policy period"; and

            d. The "claim" against you is first made to you during this "policy period" and is reported to us in writing during this "policy period" or in accordance with an Extended Reporting Period if applicable.

    **B.** Defense and Settlement

        1. We will have the right and duty to defend the "insured" against a "claim" seeking those "damages". However, we will have no duty to defend the "insured" against any "claim" seeking "damages" for "professional services" to which this insurance does not apply. We may, at our discretion, investigate any "claim" that may result.

        2. We have the right to negotiate the settlement of any "claim", whether within or above the deductible, and we will seek your written consent to any settlement. If the "named insured" refuses to consent to any settlement we recommend that is acceptable to the claimant, our Limit of Insurance for such "claim" is limited to the amount in excess of the Deductible we would have paid as "damages" had you consented to settlement at that time plus any "defense costs" covered by this Policy incurred up to the date of your refusal to settle.

        3. The amount we will pay for "damages" or "defense costs" is limited to and shall reduce the applicable Limit of Insurance. Our right and duty to defend or settle ends when we have used up the applicable Limit of Insurance in the payment of "damages" or "defense costs". In such case, we shall have the right to withdraw from further defense, payment or settlement of any "claim" by tendering control of such "claim" to you. You agree to accept such tender as a condition of this Policy.

HSII 000005

**C.** Multiple Claims

All "claims" for "damages" or "defense costs" arising out of "professional services" to the same person or entity will be deemed to have been made on the date on which the first of all such logically or causally connected "claims" is made against any "insured." For the purposes of this insurance, all "wrongful acts" that are logically or causally connected by any common fact, circumstance, situation, transaction, event, service, advice or decision, will be considered to be one "wrongful act" and will be deemed to have taken place at the time the first of these related "wrongful acts" took place. All "claims" based upon such logically or causally connected "wrongful acts" shall be deemed to constitute a single "claim" and be subject to a single each claim Limit of Insurance.

## SECTION II – DEFINITIONS

Defined terms are in quotation marks throughout this Policy and may be used in either the singular or plural, as appropriate.

**A.** "Application" means any application, supplemental application or renewal application, and any other information furnished to us for this Policy and for all previous policies issued by us to you providing uninterrupted coverage until the effective date of this Policy.

**B.** "Bodily injury" means emotional distress, disease, physical or mental injury, mental anguish, mental tension, pain and suffering, shock, sickness or death of any person.

**C.** "Claim" means a written demand for monetary "damages" arising out of a "professional service" made against the "insured".

**D.** "Damages" means any compensatory amount any "insured" is legally obligated to pay as a result of a "claim" to which this Policy applies, including judgments, awards and settlements.

"Damages" shall not include, and we will not pay "damages" or "defense costs" for:

1. Any fine, penalty, or sanction of any type against any "insured";
2. Equitable or non-pecuniary relief;
3. Any matter or amount that is uninsurable by law;
4. Money payable by any "insured" for or for the return of, royalties, commissions, fees, other forms of compensation, taxes, or profits; or
5. Punitive or exemplary damages, or the amount of any multiplied damages awarded that is in excess of the damage award so multiplied.

**E.** "Defense costs" means:
1. Attorney's fees, expert witness fees and other fees and costs, including pre-judgment and post-judgment interest paid by us or by you with our prior written consent, in the investigation and defense of covered "claims";
2. All other fees, costs and expenses resulting from the investigation, defense, settlement and appeal of a covered "claim" as authorized by us;
3. Premiums for bonds required as a result of a covered "claim", including bonds to release attachments, but only for bond amounts not exceeding the applicable Limit of Insurance.

If we make an offer to pay the applicable Limit of Insurance, we will not pay any pre-judgment interest based on that period of time after the offer. Post-judgment interest includes interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable Limit of Insurance.

"Defense costs" shall not include the salaries and wages of any of our employees or your employees, officers or directors.

**F.** "Insured" means the "named insured" and:

1. Any past, present or future principal, partner, officer, director, member, manager, employee, stockholder, or trustee of the "named insured" but only with respect to "professional services" rendered on behalf of the "named insured" or a "predecessor firm";
2. Any past, present or future non-lawyer employee or member of the "named insured" but only while acting on behalf of the "named insured" or on behalf of a "predecessor firm";
3. The heirs, executors, administrators and legal representatives of each "insured", as defined in 1. above, in the event of death, incompetency or bankruptcy of such "insured", but only for liability arising out of "professional services" rendered by the "insured" prior to such "insured's" death, incompetency or bankruptcy;
4. Any "of counsel" or independent contractor but only for "claims" for "professional services" rendered on behalf of the "named insured" with your direct supervision and pursuant to a written contract with the "named insured".

**G.** "Minimum earned premium" means twenty-five percent (25%) of the combined sum of the total policy premium listed in the Declarations and any premium adjustments by endorsement.

HSII 000006

**H.** "Named insured" means the entity or person listed in the Declarations.

**I.** "Of counsel" means:

    1. Any lawyer, limited liability professional corporation, professional corporation identified as "of counsel" on the "application" for this Policy; or

    2. Any lawyer who is an employee of a limited liability professional corporation or professional corporation identified as "of counsel" on the "application" for this Policy.

**J.** "Personal injury offense" means one or more of the following offenses:

    1. Oral or written publication of material that slanders or libels a person or organization; or

    2. Oral or written publication of material that violates a person's right of privacy; or

    3. False arrest, detention or imprisonment; or

    4. Wrongful entry into or eviction of a person from a room, dwelling or premises that the person occupies.

**K.** "Policy period" means the period shown as such in the Declarations, unless earlier cancelled pursuant to the terms of this Policy.

**L.** "Predecessor firm" means any legal entity providing "professional services" to whose financial assets and liabilities the "named insured" is the majority successor in interest prior to the effective date of this Policy.

**M.** "Professional services" means legal services rendered by or on behalf of the "named insured" or any "predecessor firm" for others:

    1. As a licensed lawyer in good standing, arbitrator, mediator or notary public; or

    2. As an administrator, conservator, executor, guardian, trustee or any other similar fiduciary capacity, provided that such services are rendered in the course of the "insured's" activities as a lawyer.

**N.** "Property damage" means physical injury to tangible property, including all resulting loss of use of that property; or loss of use of tangible property that is not physically injured. Tangible property includes electronic data which means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**O.** "Wrongful act" means any actual or alleged negligent act, error, omission.

## SECTION III – EXCLUSIONS

This Policy does not apply to any "claim", "wrongful act", "damages" or "defense costs" based upon, arising out of, or in any way involving any actual or alleged:

**A.** Fraudulent act, dishonest act, or intentional act, error, omission or offense committed with knowledge of its wrongful nature. However, if such allegations involve a "claim" to which this insurance otherwise applies, we shall defend such allegations against the "insured" until a judgment or other final adjudication establishes, or such "insured" admits, that the act, error, omission or offense was committed, or personally acquiesced in, by such "insured".

**B.** "Professional services":

    1. For any other "insured" under this Policy;

    2. For any firm, organization, entity or trust which controls, manages, owns or operates, any "insured"; or

    3. For any firm, organization, entity or trust not named in the Declarations:

        a. In which all "insureds" cumulatively at any time have or had a direct or indirect ownership interest greater than ten percent (10%); or

        b. For which any "insured" is or was a director, officer, member, partner, principal shareholder or employee; or

        c. That any "insured" at any time managed, operated, or directly or indirectly controlled.

**C.** "Bodily injury".

**D.** "Property damage".

**E.** "Personal injury offense".

**F.** "Professional services" in the capacity as an elected public official or as an employee of a governmental body, subdivision, or agency thereof.

**G.** Commingling, conversion, embezzlement or misappropriation of, inability or failure to pay, collect or return, any money, premium or tax.

**H.** Violation of any of the following:

HSII 000007

1. The Securities Act of 1933 or the Securities Exchange Act of 1934;
2. The Investment Company Act of 1940 or the Investment Advisers Act of 1940;
3. The Trust Indenture Act of 1939;
4. The Public Utility Holding Company Act of 1935;
5. The Racketeer Influenced and Corrupt Organization Act 18 USC Sections 1961; or
6. Any state Blue Sky laws, or any other law, rule or regulation involving the offer, issuance, purchase or sale of securities.

**I.** Rights, duties, or liabilities of others, which any "insured" assumes under any contract or agreement, unless the "insured" would have been held legally liable in the absence of such contract or agreement.

**J.** Discrimination against any person or group of persons including discrimination based on age, color, race, sex, creed, national origin, marital status, handicap, physical disability or sexual preference.

**K.** Activities performed in a fiduciary capacity with respect to any pension, profit sharing, health and welfare, or any other employee benefit plan or trust sponsored, established, funded, or managed by any "insured" for its own employees, including any "claim" under the Employee Retirement Income Security Act of 1974 and its amendments or any regulation or order issued pursuant the Employee Retirement Income Security Act of 1974.

**L.** Coercion, defamation, demotion, discrimination, discipline, evaluation, failure or refusal to hire or employ, harassment or humiliation, reassignment, or termination of employment or any other employment-related practices, policies, acts, errors or omissions.

**M.** Rendering of any investment advice.

**N.** Notarization of a signature without the physical appearance of the signatory before the "insured".

**O.** Criminal act.

**P.** Infringement of copyright, patent, trademark, service mark, right of publicity, slogan, trade dress, trade secret or other intellectual property rights; or false advertising, false designation of origin, product disparagement, trade libel, or other causes of action arising out of unfair competition; or violation of any law, statute or ordinance of any federal, state or municipal government or any agencies thereof, including violations of the Lanham Act or other unfair competition statutes.

**Q.** Anti-trust violation or any other unfair or anti-competitive trade practices.

**R.** Payment, division or apportionment or return of any fees.

**S.** Violation of The Telephone Consumer Protection Act (TCPA), The CAN-SPAM Act of 2003, the Fair Credit Reporting Act (FCRA), the Fair and Accurate Credit Transaction Act (FACTA) and any amendments to such law; and including violation of any other statute, ordinance or regulation that limits or prohibits the printing, dissemination, disposal, collecting, recording, transmitting, communicating, sending or distribution of any material or information.

**T.** Discharge, dispersal, seepage, migration, release, degradation or escape of asbestos, lead, mold or "pollutants" at any time; or any request, demand or order that any "insured" test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of asbestos, lead, mold, or "pollutants"; or any "claim" by or on behalf of a governmental authority for "damages" because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to or assessing the effects of asbestos, lead, mold, or "pollutants".

"Pollutants" mean any solid, liquid, gaseous, fuel, lubricant, thermal, acoustic, electrical, or magnetic irritant or contaminant, including but not limited to smoke, vapor, soot, fumes, fibers, radiation, acid, alkalis, petroleums, chemicals or "waste". "Waste" includes medical waste, biological infectants, and all other materials to be disposed of, recycled, restored, reconditioned or reclaimed;

**U.** The presence of a communicable disease, which means an illness, sickness, physical condition, or an interruption or

HSII 000008

disorder of bodily functions, systems, or organs that is transmissible by infection, virus, pathogen or contagion directly or indirectly through human contact or contact with human fluids, waste or similar agents.

**V.** Actual, alleged or threatened exposure to nuclear source material, nuclear by-product materials, nuclear waste activities, nuclear reaction, radiation or radioactive contamination, however caused;

**W.** Rendering of any services as a title insurance agent or abstractor;

**X.** Act, error or omission of any individual or entity with whom the "insured" shares common office space or common office facilities and who is not an "insured" under this Policy.

## SECTION IV – TERRITORY

This Policy applies only to "wrongful acts" arising out of your "professional services" rendered by any "insured" anywhere in the world; provided, however, that any such "claim" must be brought in the United States, its territories or possessions, or Canada.

## SECTION V– LIMITS OF INSURANCE AND DEDUCTIBLE

Regardless of the number of "insureds" under this Policy or "claims" made, our liability is limited as follows:

**A.** The LIMIT OF INSURANCE-EACH CLAIM listed in the Declarations is our maximum liability for "damages" and "defense costs" for each covered "claim" under this Policy.

**B.** All "wrongful acts" that are logically or causally connected by any common fact, circumstance, situation, transaction, event, advice or decision, will be considered to be one "wrongful act". All "claims" based upon such logically or causally connected "wrongful acts" shall be deemed to constitute a single "claim" and be subject to a single EACH CLAIM LIMIT OF INSURANCE.

**C.** The LIMIT OF INSURANCE-AGGREGATE is our maximum liability for "damages" and "defense costs" under this Policy, subject to the LIMIT OF INSURANCE-EACH CLAIM.

**D.** If two or more insurance Policies issued by us or any of our affiliated companies apply to the same "claim", the most we shall be liable for under all such policies is the Limit of Insurance of that Policy which has the highest applicable Limit of Insurance. If the Limit of Insurance on each Policy is the same, only one limit will apply. This provision will not apply to any insurance policy issued by us or an affiliated company to specifically apply as excess insurance over this Policy.

**E.** We shall be liable only for those amounts payable as "damages" and "defense costs" incurred in the defense of a "claim" or suit which are in excess of the Deductible listed in the Declarations. The Deductible listed in the Declarations applies to "damages" and "defense costs" for each "claim" and shall be paid by you. If we opt to advance payment of all or part of the Deductible, you shall reimburse us within thirty (30) days of our request for reimbursement. The Deductible amount reduces the Limit of Insurance payable under this Policy.

## SECTION VI – GENERAL CONDITIONS

**A.** Bankruptcy

Bankruptcy or insolvency of any "insured" or of any "insured's" estate will not relieve us of our obligations under this Policy.

**B.** Legal Action Against Us

1. No action may be brought against us unless there has been full compliance with all of the terms of this Policy and the ultimate amount of the "insured's" responsibility has been finally concluded either by a trial judgment against the "insureds" or by written agreement with the "insureds", all claimants, and us;

2. No person or organization has any right under this Policy to join us as party into any suit to determine the liability of any "insured".

**C.** Other Insurance

This insurance shall be excess over any other valid insurance, whether such insurance is considered contributory, excess, primary or otherwise, unless such insurance specifically applies in excess of this Policy.

**D.** Representations

By accepting this Policy, you agree that:

1. The "application", and all other information and statements provided to us are true, accurate and complete and

HSII 000009

that the "application" and all such information and statements are made part of this Policy;

2. The "application" and all other information and statements provided to us are representations and warranties made to us on behalf of all "insureds";

3. This Policy has been issued in reliance upon the truth and accuracy of those representations and warranties; and

4. Concealment, misrepresentation or fraud in the procurement of this Policy which, if known by us, would have led us to refuse to enter into this contract at its current terms, conditions or pricing, or to provide coverage for a "claim" hereunder, will be deemed material and this Policy shall be void. In such an event, the Company shall have no obligation to return any portion of the premium.

**E.**   Subrogation

If any "insured" has rights to recover all or part of any "damages" or "defense costs" that we have paid under this Policy, those rights are transferred to us. You and all other "insureds" must do nothing to harm these rights and will cooperate with us to enforce these rights.

**F.**   Named Insured Responsibilities

The "named insured" listed first in the Declarations of this Policy shall act on behalf of all "insureds" with respect to completing the "application" for this insurance, including representing the truth, accuracy and completeness of all information, giving or receiving notice of cancellation or non-renewal, paying premium or receiving unearned premium, paying the Deductible, consenting to the settlement of any "claim", agreeing to any changes in this Policy, and electing whether or not to purchase the Extended Reporting Period described in **SECTION IX – OPTIONAL EXTENDED REPORTING PERIODS.**

**G.**   Cancellation and Non-Renewal

1. Cancellation

   a. The "named insured" listed first in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.
   b. We may cancel this policy by mailing or delivering to the "named insured" written notice of cancellation at least:
      i. Ten (10) days before the effective date of cancellation if we cancel for non-payment of premium or non-payment of Deductible; or
      ii. Thirty (30) days before the effective date of cancellation if we cancel for any other reason.
   c. We will mail or deliver our notice to the "named insured's" last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.
   d. Notice of cancellation will state the effective date of cancellation. The "policy period" will end on that date.
   e. If this Policy is cancelled, we will send the "named insured" any refund due. If we cancel for reasons other than non-payment of premium, the refund will be pro rata. If we cancel due to non-payment of premium or if the "named insured" cancels for any reason, the refund may be less than pro rata and is subject to the "minimum earned premium". The cancellation will be effective even if we have not made or offered a refund.

2. Non-Renewal

   a. If we elect not to renew this policy, we shall mail written notice to the "named insured's" last mailing address known to us. Such written notice of non-renewal shall be mailed at least thirty (30) days prior to the end of the "policy period".
   b. If notice is mailed, proof of mailing will be sufficient proof of notice.

**H.**   Change In Exposure: Mergers and Acquisitions

1. If, during the "policy period", any of the following events occur:

   a. The acquisition of any "named insured", or a majority of its assets as reflected in that "named insured's" most recent audited consolidated financial statements, by another entity or the merger or consolidation of any "named insured" into or with another entity such that the "named insured" is not the surviving entity; or

   b.  The appointment of a receiver, conservator, trustee, liquidator or rehabilitator, or any similar official, for or with respect to any "named insured";

   then coverage under this Policy will cease with respect to "professional services" rendered after such event. After any such event, this Policy may not be canceled by any "insured" and the entire premium for this Policy will be deemed fully earned.

HSII 000010

2. If during the "policy period", any "named insured" acquires the majority of the assets of another entity as reflected in the other entity's most recent audited consolidated financial statements or acquires any organization by merger into or consolidation with the "named insured" no coverage shall be afforded under this Policy for any "claim" involving the assets acquired or the entity which is consolidated or merged with or acquired unless:

   a. You provide written notice of such creation, ac5) days after the effective date thereof, but before Policy expiration, whichever is earlier; and
   b. You provide us with all information that we mayquisition, or merger within fifteen (1 deem necessary; and
   c. You accept any terms, conditions, exclusions and pay any additional premium charged; and
   d. We, at our sole discretion, specifically agree in writing to provide such coverage.

   If we agree to provide such coverage, it shall apply only to "professional services" rendered after the effective date of such transaction and shall apply as excess of any other valid and collectible insurance.

3. If during the "policy period", the number of lawyers qualifying as "insureds" on the effective date of this Policy is increased by 50% or more, the "named insured" shall report such increase in writing to the Company within forty-five (45) days of the increase or before the expiration date of the Policy, whichever is earlier. The "named insured" shall provide any additional information the Company requires and the Company shall have the right to charge and additional premium.

**I.** Fraudulent Acts

If any "insured" commits fraud in connection with any "claim" submitted to the Company, this insurance shall become void from the date such fraudulent "claim" is submitted. In such an event, the Company shall have no obligation to return any portion of the premium.

**J.** Assignment of Interest Limitation

Assignment of interest by you under this Policy shall not bind us unless we agree and endorse the assignment onto this Policy.

**K.** Service Of Suit

In the event of the failure of the Company to pay any amount claimed to be due under this Policy, the Company will submit to the jurisdiction of any court of competent jurisdiction within the United States of America or Canada. All matters arising under this Policy shall be determined in accordance with the choice of law rules of such court. Nothing in this clause constitutes or should be understood to constitute a waiver of the Company's rights to commence an action in any Court of competent jurisdiction in the United States, to remove an action to a United States District Court, or to seek a transfer of a case to another Court as permitted by the laws of the United States or of any State in the United States.

Service of process in any such suit may be made upon the President of the Company or his designee at the address shown on the Declarations of this Policy. In any suit instituted upon this contract and against the President of the Company or his designee, the Company will abide by the final decision of such Court or of any Appellate Court in the event of an appeal. The President of the Company or his designee are authorized and directed to accept service of process.

Pursuant to any statute of any state, territory or district of the United States of America, the Company designates the Superintendent, Commissioner or Director of Insurance or other officer specified for the purpose in the statute, or his successors in office, as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the "insured" or any beneficiary under this Policy arising out of this contract of insurance. The Company designates the above-named as the person to whom said officer is authorized to mail such process or a true copy of such process.

## SECTION VII – WHEN THERE IS A CLAIM

A. The "insured" shall immediately provide us with written notice of any "claim". You and any other involved "insured" shall immediately provide us with any demands, notices, summons or other documents received in connection with the "claim", authorize us to obtain records and other information, and cooperate with us in the investigation, defense or settlement of the claim.

All "insureds" shall assist us in the enforcement of any right against any person or organization that may be liable to any "insured" because of "damages" or "defense costs" to which this insurance may also apply.

No "insured" will make a payment, accept liability, assume any obligation or incur any expense without first obtaining our approval, except at that "insured's" own cost.

B. If, during this "policy period", an "insured" first becomes aware of a "wrongful act", incident or circumstance that may result in a "claim" against that "insured", then that "insured" may provide written notice to us about that "wrongful act", incident or

HSII 000011

circumstance. If such notice is received by us during the "policy period", then any "claim" subsequently made against that "insured" resulting from that "wrongful act", incident or circumstance shall be deemed, for the purposes of this insurance, to have been made on the date such written notice was received by us.

If an "insured" notifies us of a "wrongful act", incident or circumstance which may result in a "claim", such notice must include:

1. A description of the "wrongful act", incident or circumstance including the date and where it occurred;
2. The nature and location of any damage that has or may result from the "wrongful act", incident or circumstance;
3. The names and addresses of any persons involved and any witnesses; and
4. Why that "insured" believes the "wrongful act", incident or circumstance may result in a "claim".

This part **B.** shall not apply to reporting permitted during any Extended Reporting Period.

SECTION VIII – ADDITIONAL TIME IN WHICH TO REPORT CLAIMS FIRST MADE AT THE END OF THE POLICY PERIOD

If a "claim" is first made against any "insured" during the last fourteen (14) calendar days of the "policy period", such "claim" will be treated as if it had been reported to the Company during this "policy period" if:

    **A.** The "insureds" demonstrate reasonable efforts to report such "claim" to us; and

    **B.** The "insureds" provides us with written notice of such "claim" no later than thirty (30) calendar days after the end of the "policy period".

This **SECTION VIII** does not apply to any "claim" for "damages" or "defense costs" that is covered in whole or in part under any other insurance, except for insurance purchased specifically to apply as excess over this Policy. This applies whether that other insurance is issued by the Company or any other insurer, and to any "claim" for "damages" or "defense costs" that would be covered by that other insurance but for the exhaustion of the limit of insurance or but for the failure of any "insured" to comply with the terms and conditions of that other insurance.

SECTION IX – OPTIONAL EXTENDED REPORTING PERIOD

If this Policy is cancelled or non-renewed by you or us for reasons other than non-payment of premium or Deductible, non-compliance with the Policy's terms and conditions, or for misrepresentation or fraud, you shall have the right to purchase an Extended Reporting Period as described below:

    **A.** The "named insured" shall have the right to purchase an Extended Reporting Period during which you may report to us a "claim" that is first made against any "insured" during such Extended Reporting Period and that results from a "wrongful act" arising out of your "professional service" rendered subsequent to the Policy Retroactive Date and before the end of the "policy period" and to which this Policy applies;

    **B.** The Extended Reporting Period is provided by endorsement for an additional premium computed as a percentage of the combined sum of the policy premium listed in the Declarations and any premium adjustments by endorsement, not including a cancellation endorsement if applicable. The premium for the Extended Reporting Period is deemed fully earned and is non-refundable the first day the Extended Reporting Period is effective. Once in effect, the Extended Reporting Period may not be cancelled by you or us;

    **C.** You must provide us a written request for the Extended Reporting Period endorsement and pay any premium due within thirty (30) days after the end of the "policy period". The Extended Reporting Period will not go into effect unless you pay the additional premium promptly when due.

For purposes of the Extended Reporting Period, any change to this Policy's premiums, limits or terms or to the premium, limits or terms of a renewal policy do not constitute a refusal to renew.

The Extended Reporting Period shall be subject to all the terms and conditions of this Policy and shall apply to "claims" first made against any "insured" and reported to us during the Extended Reporting Period and that result from a "wrongful act" arising out of your "professional service" rendered subsequent to the Retroactive Date and before the end of the "policy period".

The Limit of Insurance for "damages" and "defense costs" with respect to "claims" made during the Extended Reporting Period is considered part of, and not in addition to, the Limit of Insurance referenced in **SECTION V—LIMITS OF INSURANCE AND DEDUCTIBLE**. The fact that the period during which "claims" may be first made and reported to us under this Policy is extended by activation of the Extended Reporting Period does not in any way increase the available Limits of Insurance of this Policy.

If purchased, the Extended Reporting Period does not apply to any "claim" for "damages" or "defense costs" that is covered in whole or in part under any other insurance, except for insurance purchased specifically to apply as excess over this Policy. This applies whether that other insurance is issued by the Company or any other insurer, and to any "claim" for "damages" or "defense costs" that would be covered by that other insurance but for the exhaustion of the limit of insurance or but for the failure of any "insured" to comply with the terms and conditions of that other insurance.

SECTION X—BINDING ARBITRATION

HSII 000012

All disputes under this policy shall be subject to binding arbitration as follows:

**A.** All disputes over coverage or any rights afforded under this Policy, including whether an entity or person is a "named insured", an "insured", an additional insured or, the effect of any applicable statutes or common law upon the contractual obligations owed, shall be submitted to binding Arbitration, which shall be the sole and exclusive means to resolve the dispute. Either party may initiate the binding arbitration.

The arbitration forum and process shall be agreed to by the parties. In the event the parties cannot agree on an arbitration forum and process, the matter shall be submitted to the American Arbitration Association. The Arbitration shall be before a panel of three arbitrators, unless the parties agree to one arbitrator, all of whom shall have experience in insurance coverage of the type afforded by this Policy. If the parties select a panel of three arbitrators, each party shall select an arbitrator and the chosen arbitrators shall select a third arbitrator. The American Arbitration Association shall decide any disputes concerning the selection of the Arbitrators. The potential arbitrators from which the arbitrators shall be selected shall not be confined to those provided by the American Arbitration Association. Each party shall bear the costs of its arbitrator and shall share equally the costs of the third arbitrator and arbitration process. In the event of a single arbitrator, the cost shall be shared equally by the parties. The decision of the arbitration is final and binding on the parties.

**B.** All disputes regarding payment(s) owed under this policy for any deductible or premium, including but not limited to any audit premium, shall be settled by binding arbitration administered by the American Arbitration Association in accordance with the AAA Expedited Procedures. This arbitration shall be the sole and exclusive means to resolve the dispute. Either party may initiate the binding arbitration.

Each party will provide relevant documents in support of its position. In order to eliminate undue burden and expense, there shall be no other discovery allowed. The arbitration will be based solely on the documents submitted by the parties and there shall be no in-person or oral hearing. The disputes shall be decided by a single arbitrator. The arbitrator's decision shall be accompanied by a reasoned opinion and shall be binding upon all parties. Any judgment or award rendered by the arbitrator may be entered in any court having jurisdiction to enforce such judgment or award. Each party shall bear its own costs and expenses and an equal share of the arbitrator's fee and any administrative fees associated with the arbitration.

Except as may be required by law, neither a party nor the arbitrator may disclose the existence, content, or results of any arbitration hereunder without the prior written consent of both parties.

LPL1000 (04/21)

HSII 000013



Hamilton Select Insurance Inc
PO Box 5189
Glen Allen, VA 23058

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## ELECTRONIC NOTARIZATION ENDORSEMENT

This endorsement modifies insurance provided under the following:

**Lawyers Professional Liability**

**SECTION III - EXCLUSIONS**, item **N**. is deleted in its entirety and replaced with the following:

   N.  Notarization of a signature without the physical appearance of the signatory before the "insured", unless notarization takes place in a state that allows for electronic notarization and any such electronic notarization complies with all requirements set forth by any applicable regulations or the National E-Notarization Standards approved by the National Association of Secretaries of State;

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

LPL3005 (04/21)

HSII 000014



Hamilton Select Insurance Inc
PO Box 5189
Glen Allen, VA 23058

## PRIVACY NOTICE

We are committed to safeguarding your privacy. We understand your concerns regarding the privacy of your nonpublic personal information. No nonpublic personal information is required to be collected when you visit ourwebsites; however, this information may be requested in order to provide the products and services described.

We do not sell nonpublic personal information to non-affiliated third parties for marketing or other purposes. Weonly use and share this type of information with non-affiliated third parties for the purposes of underwriting insurance, administering your policy or claim and other purposes as permitted by law, such as disclosures to insurance regulatory authorities or in response to legal process. Notwithstanding the foregoing, we may use this information for the purpose of marketing our own products and services to you.

We collect nonpublic personal information about you from the following sources:

- Information we receive from you on applications or other forms;
- Information about your transactions with us, our affiliates, or others; and/or
- Information we receive from consumer reporting agencies and inspection reports.

We do not disclose any nonpublic personal information about our customers/claimants or formercustomers/claimants to anyone, except as permitted by law.

We may disclose nonpublic personal information about you to the following types of third parties:

- Service providers, such as insurance agents and/ or brokers and claims adjusters; and/or
- Other non-affiliated third parties as permitted by law.

We restrict access to nonpublic personal information about our customers/claimants to those individuals who need to know that information to provide products and services to our customers/claimants or as permitted by law. We maintain physical, electronic, and procedural safeguards to guard your nonpublic personal information.

*Residents of California:*
You may request to review and make corrections to recorded non-public personal information contained in our files. A more detailed description of your rights and practices regarding such information is available upon request. Please contact your agent/broker for instructions on how to submit a request to us.

PL1002 (03/21)

HSII 000015

Hamilton Select Insurance Inc
PO Box 5189
Glen Allen, VA 23058

# HAMILTON

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## ANNUAL AGGREGATE DEDUCTIBLE

This endorsement modifies insurance provided under the following:

**Professional Liability**

SCHEDULE

| Annual Aggregate Deductible | |
|---|---|
| Annual Aggregate Deductible | $30,000 |

**SECTION V – LIMITS OF INSURANCE AND DEDUCTIBLE** is amended by adding the following:

An Annual Aggregate Deductible amount as shown in the Schedule above applies as follows:

1. All amounts you reimburse us as deductibles during the "policy period" or during an Extended Reporting Period, if applicable, will be limited to the amount shown above as the Annual Aggregate Deductible.

2. All deductibles paid by you for "damages" and "defense costs" will apply towards this AnnualAggregate Deductible.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED

PL2000 (03/21)

HSII 000016

Hamilton Select Insurance Inc
PO Box 5189
Glen Allen, VA 23058

# HAMILTON

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## EXCLUSION OF DESIGNATED PERSON OR ENTITY

This endorsement modifies insurance provided under the following:

**PROFESSIONAL LIABILITY**

It is understood and agreed that Section III., EXCLUSIONS, is amended to include the following additional exclusion:

Schedule of Excluded Person or Entity

| |
|---|
| William Vincent |
| Elizabeth Ann Billbobo |
| Ryan Young |

This policy does not apply to any "professional services", "claim", "wrongful act", "damages" or "defense costs" based upon, arising out of, or In any way Involving the person or entity named In the Schedule above.

All other terms, conditions and exclusions remain unchanged.

PL3001 (03/21)

HSII 000017

Hamilton Select Insurance Inc
PO Box 5189
Glen Allen, VA 23058

**HAMILTON**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## EXCLUSION-PRIOR OR PENDING LITIGATION

This endorsement modifies insurance provided under the following:

**PROFESSIONAL LIABILITY**

It is understood and agreed that Section III., EXCLUSIONS, is amended to include the following additional exclusion:

| SCHEDULE | |
|---|---|
| Prior or Pending Litigation Date: | 06/04/2023 |

The following exclusion is added to this Policy:

This Policy does not apply to any "claim", "wrongful act", "damages", or "defense costs" based upon, arising out of, or in any way involving:

1. Any litigation, proceedings, demands, claims or administrative hearings against any "insured" occurring prior to or pending as of the Prior or Pending Litigation Date shown in the Schedule above;

2. Any future litigation, proceedings, demands, claims or administrative hearings arising from, based upon or derived from substantially the same facts, or circumstances as alleged in 1. above; or

3. Any act, error or omission by any "insured" which gave rise to such prior or pending litigation, proceedings, demands, claims or administrative hearings.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

PL3003 (03/21)

HSII 000018



Hamilton Select Insurance Inc
PO Box 5189
Glen Allen, VA 23058

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## TERRORISM EXCLUSION

This endorsement modifies insurance provided under the following:

**PROFESSIONAL LIABILITY**

It is understood and agreed that **Section III., EXCLUSIONS**, is amended to include the following additional exclusion:

This Policy does not apply to any "claim", "wrongful act", "damages", or "defense costs" based upon, arising out of, or in any way involving:

> any act of terrorism, regardless of any other cause or event contributing concurrently or in any other sequence to the loss, including without limitation, loss, damage, cost or expense of whatsoever nature directly or indirectly caused by, resulting from or in connection with any action taken in controlling, preventing, suppressing or in any way relating to the foregoing.

> For the purpose of this endorsement an act of terrorism means an act, including but not limited tothe use of force or violence and/or the threat thereof, of any person or group(s) of persons, whether acting along or on behalf of or in connection with any organization(s) or government(s), committed for political, religious, ideological or similar purposes, including the intention to influence any government and/or to put the public or any section of the public in fear.

All other terms, conditions and exclusions remain unchanged.

PL3005 (03/21)

HSII 000019



Hamilton Select Insurance Inc
PO Box 5189
Glen Allen, VA 23058

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## EXCLUSION-ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION AND DATA-RELATED LIABILITY

This endorsement modifies insurance provided under the following:

**PROFESSIONAL LIABILITY**

SECTION III-EXCLUSIONS Is amended by adding the following:

This Policy does not apply to any actual or alleged access to or disclosure of any person's or organization's confidential or personal Information, including patents, trade secrets, processing methods, customer lists, financial Information, credit card Information, health Information or any other type of nonpublic Information.

This exclusion applies even If damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense Incurred by any "Insured" or others arising out of any access to or disclosure of any person's or organization's confidential or personal Information.

All other terms, conditions and exclusions remain unchanged.

PL3006 (03/21)

HSII 000020



Hamilton Select Insurance Inc
PO Box 5189
Glen Allen, VA 23058

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSET CONTROL (OFAC) ADVISORY NOTICE TO POLICYHOLDERS

This Notice shall not be construed as part of your policy and no coverage is provided by this Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages your policy provides.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. Please read this Notice carefully.

The Office of Foreign Assets Control administers and enforces sanctions policy, based on Presidential declarations of national emergency. OFAC has identified and listed numerous Foreign Agents, Front Organizations, Terrorists, Terrorist organizations and Narcotics traffickers as "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's web site—http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a "Specially Designated National and Blocked Person", as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments and no premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.

PL3007 (03/21)

HSII 000021

**HAMILTON**

Hamilton Select Insurance Inc
PO Box 5189
Glen Allen, VA 23058

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## SOCIAL ENGINEERING FRAUD EXCLUSION

This endorsement modifies insurance provided under the following:

**PROFESSIONAL LIABILITY**

**SECTION III – EXCLUSIONS**, is amended by adding the following exclusion:

This policy does not apply to any "claim", "wrongful act", damages" or "defense costs" based upon, arising out of, or in any way involving any actual "social engineering fraud". "Social engineering fraud" as used in this exclusion, means the use of any fraudulent act, misrepresentation, deception, scheme, trick, device, or false pretense by a third party that results in the contributes to any "insureds" transfer, disbursement, payment, delivery, alteration, corruption or loss of any monies or securities.

This exclusion includes but is not limited to:

a. The failure to warn or notify clients of risks pertaining to "social engineering fraud"; or
b. The failure to implement, maintain or update any "insureds" information technology system security, authentication procedures, or any other company policies, procedures, controls or internal protocols; or
c. The failure to detect or disclose any "social engineering fraud"; or
d. The reporting or failure to report "social engineering fraud" to the proper authorities; or
e. The conducting or failing to conduct an investigation of any "social engineering fraud"; or
f. The negligent hiring, employment, training, supervision, monitoring, or retention of any employee or agent of any "insured" regarding information technology, email security, "social engineering fraud", or items a. through e. above.

This exclusion applies regardless of fault or intent and regardless of the particular cause of action.

This exclusion applies to any "claim" regardless of whether "social engineering fraud" is the initial precipitating cause or is in any way a cause, and regardless of whether any other actual or alleged cause contributed concurrently, proximately or in any sequence, including whether any actual or alleged injury or damage arises out of a chain of events that includes any "social engineering fraud".

All other terms, conditions and exclusions remain unchanged.

PL3009 (03/21)

HSII 000022



Hamilton Select Insurance Inc
PO Box 5189
Glen Allen, VA 23058

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## SPLIT LIMITS AND RETROACTIVE DATE ENDORSEMENT

This endorsement modifies insurance provided under the following:

PROFESSIONAL LIABILITY COVERAGE

It is understood and agreed that **Section I: Coverage, A. Insuring Agreement, 2. c**. is deleted and replaced with the following:

c. The "damages" arise out of a "professional service" rendered on or subsequent to the Policy Retroactive Date specified in the schedule below and before the end of this "policy period".

The RETROACTIVE DATE and LIMITS OF INSURANCE on the Declarations are amended as shown below:

**SCHEDULE OF LIMITS OF INSURANCE AND RETROACTIVE DATES**

| The following Limit of Insurance applies to damages arising out of "wrongful acts" that took place on or subsequent to the "retroactive date" shown below and prior to any later retroactive date. | | |
|---|---|---|
| Retroactive date: | 04/10/2021 | at 12:01 AM at the address of the named insured shown on the declarations |
| Each Claim Limit: | $2,000,000 | |
| Aggregate Limit: | $2,000,000 | |

| The following Limit of Insurance applies to damages arising out of "wrongful acts" that took place on or subsequent to the retroactive date shown below and prior to the end of the policy period. | | |
|---|---|---|
| Retroactive date: | 06/04/2023 | at 12:01 AM at the address of the named insured shown on the declarations |
| Each Claim Limit: | $3,000,000 | |
| Aggregate Limit: | $3,000,000 | |

For the purposes of determining the applicable retroactive date, all "wrongful acts" that are logically or causally connected by any common fact, circumstance, situation, transaction, event, service, advice or decision will be considered to be related "wrongful acts" and will be deemed to have taken place at the time the first of these related "wrongful acts" took place, regardless of the number of "wrongful acts" and even though the nature and extent of any resulting damages may be continuous, progressive, cumulative, changing or evolving. Under no circumstances shall more than one "retroactive date" apply to any related "wrongful acts".

All claims based upon such related "wrongful acts" shall be deemed to constitute a single claim and be subject to a single Limit of Insurance. Under no circumstances shall more than one Limit of Insurance apply to related "wrongful acts".

Such Limits of Insurance do not apply cumulatively and cannot be stacked or aggregated. Only one Limit of Insurance may apply

HSII 000023

to any one claim and in no event will the Aggregate Limit of Insurance for this Policy exceed the higher of the Aggregate Limits shown above.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

PL3017 (04/21)

HSII 000024



Hamilton Select Insurance Inc
PO Box 5189
Glen Allen, VA 23058

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## CYBER EXCLUSION

This endorsement modifies insurance provided under the following:

PROFESSIONAL LIABILITY

It is understood and agreed that **SECTION III – EXCLUSIONS** is amended to include the following additional exclusion:

This policy does not apply to any "claim", "wrongful act", "damages" or "defense costs" based upon, arising out of, or in any way involving any actual or alleged:

A. "Cyber injury";

B. Loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate "electronic data";

C. Access to, or loss, destruction, disclosure, disruption, inspection, modification, recording, release, review, use, collection, processing, or storage of, any person's or organization's confidential or "personal information", including but not limited to patents, trade secrets, processing methods, customer lists, financial information, credit card information, biometric or health information or any other type of nonpublic information; or

D. Legal proceeding, administrative action or hearing arising out of Paragraphs A. through C. above, including but not limited to those initiated prior to, or pending as of, the inception date of this policy.

As used in this endorsement:

A. "Cyber injury" means any actual, alleged or suspected, intentional or unintentional, breach of or unauthorized access to any data, software, hardware or computer system, wherever located, that results in:

1. Loss, destruction, disclosure, disruption, inspection, modification, recording, release, review or use of "personal information";

2. Oral or written publication of material that violates a person's right of privacy;

3. Inability to access any website or any electronic system;

4. Release, introduction, transmission or facilitation of any "malicious code";

5. Forensic or investigative expenses;

6. Extortion or terrorism acts or threats;

7. Monitoring or notification costs or expenses;

8. Crisis management or public relations expenses;

9. Data or system recovery, repair, replacement or restoration expenses;

10. Business interruption expenses; or

11. Losses arising out of fraudulent instructions transmitted by electronic means, including through "social engineering fraud".

B. "Electronic data" means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data

HSII 000025

processing devices or any other media which are used with electronically controlled equipment.

C.  "Malicious code" includes, but is not limited to, any virus, worm, script, Trojan horse, logic bomb, web robot, spyware, adware, malware, ransomware or other similar software program.

D.  "Personal information" means any personally identifying information or data about an individual, as defined by foreign, federal, state or local laws, statutes or regulations.

E.  "Social engineering fraud" means the use of any fraudulent act, misrepresentation, deception, scheme, trick, device or false pretense by a third party that results in or contributes to any "insured's" transfer, disbursement, payment, delivery, alteration, corruption or loss of any monies or securities.

All other terms, conditions and exclusions remain unchanged.

PL3023 (07/21)

HSII 000026

Hamilton Select Insurance Inc
PO Box 5189
Glen Allen, VA 23058

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## NUCLEAR ENERGY LIABILITY EXCLUSION (BROAD FORM)

This endorsement modifies insurance provided under the following:

ALL COVERAGE LINES

It is understood and agreed that:

This Policy does not apply:

    A.   Under any Liability Coverage, to "bodily injury" or "property damage":
        1.   With respect to which an "insured" under the Policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or
        2.   Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "insured" is, or had this Policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.
    B.   Under any Medical Payments Coverage, or under any Supplementary Payments Provision relating to first aid, or to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

    C.   Under any Liability Coverage, to "bodily injury" or "property damage" resulting from the "hazardous properties" of "nuclear material", if:
        1.   The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or (b) has been discharged or dispersed therefrom;
        2.   The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an "insured"; or
        3.   The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

As used in this endorsement:

    A.   "Hazardous properties" includes radioactive, toxic or explosive properties.

    B.   "Nuclear material" means "source material", "special nuclear material" or "byproduct material".

    C.   "Source material", "special nuclear material", and "byproduct material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

    D.   "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

    E.   "Waste" means any waste material (1) containing "byproduct material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material"

content and (2) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

F.  "Nuclear facility" means:

1.  Any "nuclear reactor";

2.  Any equipment or device designed or used for (a) separating the isotopes of uranium or plutonium, (b) processing or utilizing "spent fuel", or (c) handling, processing or packaging "waste";

3.  Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

4.  Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste",

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

G.  "Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

H.  "Property damage" includes all forms of radioactive contamination of property.


All other terms, conditions and exclusions remain unchanged.


AP7300 (07/21)

HSII 000028



Hamilton Select Insurance Inc
PO Box 5189
Glen Allen, VA 23058

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## BIOMETRIC DATA EXCLUSION

This endorsement modifies insurance provided under the following:

ALL COVERAGE LINES

It is understood and agreed that:

This Policy does not apply to any:

A.   Actual or alleged collection, use, safeguarding, handling, storage, retention, sharing, processing, destruction or selling of any "biometric data"; or

B.   Actual or alleged violation of any law in connection with "biometric data", including but not limited to the Illinois Biometric Information Privacy Act (740 ILCS 14/1 et seq.) as amended, or any rules or regulations promulgated thereunder.

As used in this endorsement:

A.   "Biometric Data" means any information, data or samples by which a person can be uniquely identified by evaluating one or more distinguishing biological traits, including but not limited to: retina or iris scan; fingerprint scan; voiceprint; scan of the hand or face geometry; or any other biometric identifier, biometric algorithm or biometric measurement, if such allows an individual to be uniquely identified.

All other terms, conditions and exclusions remain unchanged.

AP7301 (07/21)

HSII 000029



Hamilton Select Insurance Inc
PO Box 5189
Glen Allen, VA 23058

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## TRADE OR ECONOMIC SANCTIONS EXCLUSION

This endorsement modifies insurance provided under the following:

ALL COVERAGE LINES

It is understood and agreed that:

This Policy does not provide any coverage, and we shall not make payment of any claim or provide any benefit hereunder, to the extent that the provision of such coverage, payment of such claim or provision of such benefit would expose us to a violation of any applicable trade or economic sanctions, laws or regulations, including but not limited to, those administered and enforced by the United States Treasury Department's Office of Foreign Assets Control (OFAC).

All other terms, conditions and exclusions remain unchanged.

AP7302 (01/22)

HSII 000030



Hamilton Select Insurance Inc
PO Box 5189
Glen Allen, VA 23058

Manuscript 1

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## ADDITIONAL NAMED INSURED ENDORSEMENT

This endorsement modifies insurance provided under the following:

PROFESSIONAL LIABILITY

It is understood and agreed that Item 1. **NAMED INSURED** on the Declarations is amended to include the following:

| |
|---|
| Krause & Kinsman DC, LLP |
| Krause & Kinsman Law Firm, LLC |
| Krause and Kinsman Trial Lawyers LLP |

All other terms, conditions and exclusions remain unchanged.

HSII 000031



Hamilton Select Insurance Inc
PO Box 5189
Glen Allen, VA 23058

**THIS ENDORSEMENT CHANCES THE POLICY. PLEASE READ IT CAREFULLY.**

## SIGNATURE ENDORSEMENT

By signing and delivering this policy to you, we state that it is a valid contract when signed as below by the authorized representative of Hamilton Select Insurance Inc.

*Anita Kuchma*
**Chief Executive Officer**

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

AP7000 (11/22)

HSII 000032